# EXHIBIT A

# NOTE

Multistate

FHA Case No.
MIN:

MARCH 28, 2013     Maple Glen,        PENNSYLVANIA
[Date]              [City]             [State]

5011 Saul St & 5014 R Leiper St, Philadelphia, PA 19124
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means CENTENNIAL LENDING GROUP LLC, A LIMITED LIABILITY COMPANY.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ******ONE HUNDRED TWENTY THOUSAND SEVEN HUNDRED SEVENTY TWO AND NO/100****************************** Dollars (U.S. $120,772.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND ONE-FOURTH             percent (   4.250%   ) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the        1ST       day of each month beginning on  MAY 1, 2013.          Any principal and interest remaining on the     1ST         day of APRIL, 2043        will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at
1126 HORSHAM ROAD
MAPLE GLEN, PA 19002

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S.       $594.13.    This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box]    ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge
                          ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of    15    calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR               percent (     4.000%   ) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 10/95                                                      Initials: M.C.
Online Documents, Inc.                          Page  1  of  2                              P8700NOT  0804

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_melvin Chappell Jr._ (Seal)
Melvin Chappell Jr.

PAY TO THE ORDER OF    **Pacific Union Financial, LLC**
WITHOUT RECOURSE

CENTENNIAL LENDING GROUP LLC,
A LIMITED LIABILITY COMPANY

BY: _Linda Joy Clayton_
Linda Joy Clayton, Closing Manager

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.    Page 2 of 2    P8700NOT 0804

Chappell

L. JOY CLAYTON
CENTENNIAL LENDING GROUP, LLC
1126 HORSHAM ROAD
MAPLE GLEN, PA 19002
215-469-1000
After Recording Return To:
CENTENNIAL LENDING GROUP, LLC
ATTN: FINAL DOCUMENT DEPARTMENT
1126 HORSHAM ROAD
MAPLE GLEN, PA 19002

APN #:
APN #:

52623522
Page: 1 of 10
04/11/2013 12:40PM

This Document Recorded
04/11/2013
12:40PM
Doc Code: M    Commissioner of Records, City of Philadelphia

Doc Id: 52623522
Rec Fee: 200.00

Escrow No.:
LOAN #:

———————————[Space Above This Line For Recording Data]———————————

Commonwealth of Pennsylvania    **MORTGAGE**    FHA Case No.

MIN:

THIS MORTGAGE ("Security Instrument") is given on **MARCH 28, 2013.**
The Mortgagor is **MELVIN CHAPPELL, JR.**

("Borrower").

"**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**CENTENNIAL LENDING GROUP, LLC, A LIMITED LIABILITY COMPANY**

("Lender") is organized and existing under the laws of **PENNSYLVANIA,**
and has an address of **1126 HORSHAM ROAD, MAPLE GLEN, PA 19002.**

Borrower owes Lender the principal sum of *ONE HUNDRED TWENTY THOUSAND SEVEN HUNDRED
SEVENTY TWO AND NO/100************************ Dollars (U.S.    $120,772.00    ).

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                    Page 1 of 9    Initials: M.C.
                                                         PAEFHADE    PAEFHALD 1212

M10

LOAN #:

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **APRIL 1, 2043.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **Philadelphia** County, Pennsylvania:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
APN #:
APN #:

which has the address of **5011 Saul St & 5014 R Leiper St, Philadelphia**

[Street, City],

Pennsylvania  **19124**    ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.     Page 2 of 9     Initials: M.C.
PAEFHALD 1212



LOAN #: ■

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.    Page 3 of 9    Initials: *M. C.*
PAEFHALD 1212

LOAN #: ▮

damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                     Page 4 of 9                     Initials: M.C.
                                                                          PAEFHALD 1212

LOAN #: ▮

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
      (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                    Page 5 of 9                    Initials: *mc*
                                                                         PAEFHALD 1212

LOAN #: ▮

Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.

FHA Pennsylvania Mortgage - 4/96  
Online Documents, Inc.    Page 6 of 9    Initials: M.C.  
PAEFHALD 1212

**LOAN #:** ▮▮▮▮▮

However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Condominium Rider     ☐ Growing Equity Rider     ☐ Planned Unit Development Rider
☐ Graduated Payment Rider     ☐ Other(s) [specify]

LOAN #: ▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____*Melvin Chappell Jr.*_____ (Seal)
Melvin Chappell Jr.

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                    Page  8  of  9                                    PAEFHALD  1212

Certificate of Residence

I, __Carla Ceneviva__ do hereby certify that the correct address of the within-named Mortgagee is __1126 HORSHAM ROAD, MAPLE GLEN, PA 19002__

Witness my hand this __28TH__ day of __March, 2013__

_____
Agent of Mortgagee

Commonwealth of PENNSYLVANIA
County of: __Montgomery__

On this, the __28__ day of __March, 2013__ before me, __Jessica Sysol__, the undersigned officer, personally appeared Melvin Chappell Jr., known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

My commission expires: __1-21-17__

_Jessica Sysol_
__Settlement agent__
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JESSICA SYSOL
Notary Public
ABINGTON TWP., MONTGOMERY COUNTY
My Commission Expires Jan 21, 2017

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.

Page 9 of 9

Initials: __M.C.__
PAEFHALD 1212

TF13-040
Terra Abstract Inc.
410 The Pavilion
Jenkintown, Pa. 19046

# Exhibit A

Parcel Nos.: ███████

### PREMISES "A"

**ALL THAT CERTAIN** lot or piece of ground with the three story brick messuage or tenement thereon erected, described according to a Survey and Plan thereon made by J.W. Webster, Jr., Surveyor and Regulator of the 10th District of the City of Philadelphia, on November 9, 1914, as follows, to wit:

**SITUATE** on the Southeasterly side of Saul Street (60 feet wide) at the distance of 139 feet, 5 ¼ inches Northeastwardly from the Northeasterly side of Wakeling Street (50 feet wide) in Frankford, in the 23rd Ward of the said City.

**CONTAINING** in front or breadth on the said Saul Street, 21 feet, 3 inches and extending Southeastwardly of that width in length or depth between parallel lines at right angles to the said Saul Street 100 feet the Southwesterly line thereof passing through the center of the brick partition wall between this and the adjoining premises.

**BEING** No. 5011 Saul Street.

### PREMISES "B"

**ALL THAT CERTAIN** interior lot or piece of ground described according to a Survey and Plan thereof made by Ernest H. Brooks, Surveyor and Regulator of the 8th District on the 11th day of August, A.D. 1952 as follows, to wit:

**BEGINNING** at a point at the distance of 55 feet, 4-1/4 inches North 53 degrees, 45 minutes, 0 seconds West from the Northwesterly side of Leiper Street (on City Plan but not legally opened 50 feet wide) which said last mentioned point is at the distance of 115 feet, 1-1/2 inches Northeastwardly from the Northeasterly side of Wakeling Street 50 feet wide; thence extending from the first mentioned point and place of beginning North 53 degrees, 45 minutes, 0 seconds West 45 feet, 9 inches to a point; thence extending North 38 degrees, 55 minutes, 0 seconds East 56 feet, 7-7/8 inches to a point; thence extending South 51 degrees, 5 minutes, 0 seconds East 42 feet, 2 inches to a point and thence extending South 36 degrees, 15 minutes, 0 seconds West 54 feet, 7-5/8 inches to the first mentioned point and place of beginning.

**PART OF LOT NO.** 42 and/or No. 43 on Plan of Wister Park in the 23rd Ward of the City of Philadelphia.

**BEING ASSESSED AS** 5014-R Leiper Street (Rear).

eRecorded in Philadelphia PA - Doc Id: 53016771
01/27/2016 09:33 AM    Page 1 of 2    Rec Fee: $220.00
Receipt#: 16-08558
Records Department    Doc Code: A

PREPARED BY: SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO: SECURITY CONNECTIONS, INC.
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401
PH. (208)528-9895

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
LOAN NO.:

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR CENTENNIAL LENDING GROUP, LLC, ITS SUCCESSORS AND ASSIGNS** located at 1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834 or P.O. Box 2026, FLINT, MICHIGAN 48501-2026, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **PACIFIC UNION FINANCIAL, LLC** located at 1603 LBJ FREEWAY, SUITE 500, FARMERS BRANCH, TX 75234, Assignee, its successors and assigns, that certain Mortgage dated MARCH 28, 2013 executed by **MELVIN CHAPPELL, JR.**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR CENTENNIAL LENDING GROUP, LLC, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of $120,772.00 and recorded on APRIL 11, 2013 in the Office of the Register, Recorder, or County Clerk of PHILADELPHIA County, State of PENNSYLVANIA, as Document No. 52623522, more particularly described and commonly known as:
AS DESCRIBED IN SAID MORTGAGE
Property Address: 5011 SAUL ST & 5014 R LEIPER ST PHILADELPHIA, PA 19124
CITY OF PHILADELPHIA
TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.
TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.
IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this JANUARY 22, 2016.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

TIFFANY BITSOI, VICE PRESIDENT

STATE OF IDAHO         COUNTY OF BONNEVILLE    ) ss.
On JANUARY 22, 2016, before me, DAWN GROVER, personally appeared TIFFANY BITSOI known to me to be the VICE PRESIDENT of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

DAWN GROVER (COMMISSION EXP. 02/13/2021)
NOTARY PUBLIC

[Notary stamp: DAWN GROVER NOTARY PUBLIC STATE OF IDAHO]

I do hereby certify that the precise address of the Assignee Residence is:
PACIFIC UNION FINANCIAL, LLC, 1603 LBJ FREEWAY, SUITE 500, FARMERS BRANCH, TX 75234

TIFFANY BITSOI, VICE PRESIDENT

Page 1 of 1        MIN:
MERS PHONE: 1-888-679-6377

## PREMISES "A"

**ALL THAT CERTAIN** lot or piece of ground with the three story brick messuage or tenement thereon erected, described according to a Survey and Plan thereof made by J.W. Webster, Jr., Surveyor and Regulator of the 10th District of the City of Philadelphia, on November 9, 1914, as follows, to wit:

**SITUATE** on the Southeasterly side of Saul Street (60 feet wide) at the distance of 139 feet, 5 ¼ inches Northeastwardly from the Northeasterly side of Wakeling Street (50 feet wide) in Frankford, in the 23rd Ward of the said City.

**CONTAINING** in front or breadth on the said Saul Street, 21 feet, 3 inches and extending Southeastwardly of that width in length or depth between parallel lines at right angles to the said Saul Street 100 feet the Southwesterly line thereof passing through the center of the brick partition wall between this and the adjoining premises.

**BEING** No. 5011 Saul Street.

## PREMISES "B"

**ALL THAT CERTAIN** interior lot or piece of ground described according to a Survey and Plan thereof made by Ernest H. Brooks, Surveyor and Regulator of the 8th District on the 11th day of August, A.D. 1952 as follows, to wit:

**BEGINNING** at a point at the distance of 55 feet, 4-1/4 inches North 53 degrees, 45 minutes, 0 seconds West from the Northwesterly side of Leiper Street (on City Plan but not legally opened 50 feet wide) which said last mentioned point is at the distance of 115 feet, 1-1/2 inches Northeastwardly from the Northeasterly side of Wakeling Street 50 feet wide; thence extending from the first mentioned point and place of beginning North 53 degrees, 45 minutes, 0 seconds West 45 feet, 9 inches to a point; thence extending North 38 degrees, 55 minutes, 0 seconds East 56 feet, 7-7/8 inches to a point; thence extending South 51 degrees, 5 minutes, 0 seconds East 42 feet, 2 inches to a point and thence extending South 36 degrees, 15 minutes, 0 seconds West 54 feet, 7-5/8 inches to the first mentioned point and place of beginning.

**PART OF LOT NO.** 42 and/or No. 43 on Plan of Wister Park in the 23rd Ward of the City of Philadelphia.

Date Filed: 02/04/2019
Pennsylvania Department of State

PENNSYLVANIA DEPARTMENT OF STATE
BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS

☐ Return document by mail to:

CSC order #609271-140   LBH
Name

CSC
(xx) Return document by email to: cscpa@cscglobal.com

Transfer of Foreign Registration
DSCB:15-418

Read all instructions prior to completing. This form may be submitted online at https://www.corporations.pa.gov/.

Fee: $70

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. § 418 (relating to transfer of registration), the undersigned registered foreign association hereby states that:

1. The name of the association under which it is registered to do business in this Commonwealth and before the merger or conversion is:

Pacific Union Financial, LLC

2. The type of association before the merger or conversion is (check only one):
   ☐ Business Corporation         ☐ Limited Partnership                       ☐ Business Trust
   ☐ Nonprofit Corporation        ☐ Limited Liability (General) Partnership   ☐ Professional Association
   ☑ Limited Liability Company    ☐ Limited Liability Limited Partnership

3. The name of the association following the merger or conversion:

Nationstar Mortgage LLC

3A. If the name in 3 does not contain a required designator or if the name in 3 is not available for use in the Commonwealth, the alternate name under which the association is registering in this Commonwealth is:

4. The type of association after the merger or conversion (check only one):
   ☐ Business Corporation         ☐ Limited Partnership                       ☐ Business Trust
   ☐ Nonprofit Corporation        ☐ Limited Liability (General) Partnership   ☐ Professional Association
   ☑ Limited Liability Company    ☐ Limited Liability Limited Partnership

5. The jurisdiction of formation of the association after the merger or conversion is: Delaware

2019 FEB -4 PM 1:15
DEPT. OF STATE

DSCB:15-418 - 2

**If different than the information for the registered foreign association before the merger or conversion, all of the following information for the association after the merger or conversion:**

**6A.** The street and mailing address of the association's principal office is:

| 8950 Cypress Waters Blvd, | Coppell, | Texas | 75019 |
|---|---|---|---|
| Number and street | City | State | Zip |

**6B.** The street and mailing address of the office, if any, required to be maintained by the law of the association's jurisdiction of formation in that jurisdiction is:

| | | | |
|---|---|---|---|
| Number and street | City | State | Zip |

**7.** The (a) address of the association's registered office in this Commonwealth or (b) name of its Commercial Registered Office Provider and the county of venue is:

*Complete part (a) OR (b) – not both:*

(a) _____
    Number and street           City                State       Zip       County

                                  **OR**

(b) c/o: Corporation Service Company                                      Dauphin
    Name of Commercial Registered Office Provider                         County

**8.** Effective date of transfer of foreign registration is (check, and if appropriate complete, one of the following):
☑ The Transfer of Foreign Registration shall be effective upon filing in the Department of State.
☐ The Transfer of Foreign Registration shall be effective on: _____ at _____.
                                                              Date (MM/DD/YYYY)    Hour (if any)

IN TESTIMONY WHEREOF, the undersigned registered foreign association has caused this Transfer of Foreign Registration to be signed by a duly authorized representative of the surviving or converted association this 1st day of February 20 19.

Nationstar Mortgage LLC
Name of Association

*/s/ Karen L. Robb/*
Signature

Assistant Secretary
Title